OPINION
{¶ 1} Defendant-appellant Alvin Davis appeals from his conviction and sentence for Robbery, following a jury trial. Davis contends that his conviction is against the manifest weight of the evidence, that his trial counsel was ineffective for having failed to move to suppress the victim's identification testimony, and that he was prejudiced by prosecutorial misconduct, in that the prosecutor misstated the evidence in her closing argument.
{¶ 2} We conclude that Davis's identity as the perpetrator of the Robbery is amply supported by the victim's testimony. We further conclude that Davis's trial counsel was not ineffective for having failed to move to suppress the identification testimony, because the likelihood of that motion succeeding was small. Finally, we conclude that the prosecutor did not significantly misstate evidence in her closing argument. Accordingly, the judgment of the trial court is Affirmed.
 I
{¶ 3} At about 5:00 p.m. on April 10, 2001, Thomas Basham was delivering a pizza to an apartment in downtown Dayton. Basham was employed by Pizza Hut as a delivery person.
{¶ 4} Just after Basham entered the apartment building, Davis stopped him and asked for money. It was light outside, Davis was between 2 1/2 and 3 feet away from Basham, and Basham could see Davis clearly. Basham refused to give Davis money, and proceeded on into the building to make his delivery.
{¶ 5} At about 9:00 p.m., that same evening, Basham had occasion to make another delivery to the same apartment building. At this time, it was "pretty dark." Basham used the stairs to get to the second floor, where he made his delivery. As Basham was leaving the building, he was grabbed from behind in what he described as a "bear hug."
{¶ 6} The person who grabbed Basham said, "give me the money." Basham spun around and got loose. His assailant slipped into the building, and pulled the door shut. The door was a glass door; that is, it was entirely glass, so that one could see through it. Basham observed his assailant through the glass door for "a minute or two." At this time, Basham's assailant was 2 to 2 1/2 feet away. Basham recognized the assailant as the man who had earlier asked him for money. Davis, who testified, acknowledged that he had earlier asked Basham for money.
{¶ 7} Basham's description of Davis's height and weight was significantly different from Davis's actual height and weight. Basham described his assailant as being 6'2" tall, and 150 pounds, whereas it appears that Davis is actually 6'6" tall, and 185 pounds. However, it should be noted that Basham does not appear to be skilled at estimating height and weight. Basham testified that he does not know his own height and weight. Basham did testify that he recognizes faces.
{¶ 8} Basham returned to his place of employment, and called the police. Dayton police officer Edmond Trick responded.
{¶ 9} Trick was aware that Davis was the person who often frequented the premises. At some point during his discussion with Basham, Trick asked Basham "if there was any type of . . . bandage or anything on the person," to which Basham replied, "yes, there was a cast on that person." Trick then asked Basham which foot the cast was on, and Basham told him that it was on the left leg. In fact, Davis did have a cast at that location.
{¶ 10} Trick drove Basham in Trick's cruiser to the scene. Davis was still at the scene, and Basham identified him. There was conflict in the testimony of Basham and Trick concerning who first pointed Davis out. Basham testified that: "I saw him and then I pointed him out." Trick testified that as they were pulling up to the building, he saw Davis, and asked Basham if that was the individual who had robbed him, and that Basham replied, without hesitation, in the affirmative.
{¶ 11} A second police cruiser was called to the scene, and Davis was arrested. While Davis was sitting in the rear of the second cruiser, Basham was asked again if that was the perpetrator, and he replied in the affirmative.
{¶ 12} Davis was charged with Robbery. Following a jury trial, Davis was convicted, and sentenced accordingly. From his conviction and sentence, Davis appeals.
 II
{¶ 13} Davis's first assignment of error is as follows:
{¶ 14} "THE TRIAL COURT ERRED TO APPELLANT'S PREJUDICE WHEN IT ENTERED JUDGMENT OF GUILT WHERE SUCH JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
{¶ 15} Davis bases this assignment of error upon his contention that Basham's identification testimony is not worthy of belief.
{¶ 16} Davis testified. In his testimony, Davis corroborated that he was the individual who had earlier asked Basham for money. Basham testified that the person who grabbed him and the person who had earlier asked him for money were one and the same. Thus, even apart from Basham's subsequent identification, at the show-up, of Davis as the perpetrator, Basham had already recognized Davis as the perpetrator. Also, when Basham was asked whether there had been any type of "bandage or anything" on his assailant's person, Basham correctly indicated that his assailant was wearing a cast, and then correctly indicated that the cast was being worn on his assailant's left foot. These circumstances give Basham's identification testimony indicia of reliability, notwithstanding the difficulty Basham had estimating his assailant's height and weight. We are satisfied that the jury could reasonably credit Basham's identification testimony.
{¶ 17} Davis's First Assignment of Error is overruled.
 III
{¶ 18} Davis's Second Assignment of Error is as follows:
{¶ 19} "THE APPELLANT WAS PREJUDICED BY THE INEFFECTIVE ASSISTANCE OF HIS APPOINTED TRIAL COUNSEL WHEN SAID COUNSEL FAILED TO MOVE THE COURT TO SUPPRESS THE IDENTIFICATION EVIDENCE IN THIS CASE WHEN SUCH A MOTION WOULD HAVE HAD A HIGH PROBABILITY OF SUCCESS AND WOULD LIKELY HAVE LEAD TO AN ACQUITTAL."
{¶ 20} Davis's trial counsel did not move to suppress the identification testimony. Davis claims that this constituted ineffective assistance of counsel. As Davis notes, to portray ineffective assistance of trial counsel, he must demonstrate both that his trial counsel's performance was deficient, and that he was prejudiced because "there is a reasonable probability that, but for trial counsel's errors, defendant would not have been convicted." A show-up identification procedure is not unduly suggestive if it occurs shortly after the offense, and if there are indicia of the reliability of the identification, which may include the opportunity of the witness to have viewed the perpetrator at the time of the offense, the witness's degree of attention, the accuracy of the witness's prior description of the criminal, and the level of certainty demonstrated by the witness at the confrontation. Neil v. Biggers
(1972), 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401.
{¶ 21} Of the factors, only the accuracy of Basham's prior description of the perpetrator works in Davis's favor. The show-up occurred not long after the offense, Basham was certain of the identification, and he had a good opportunity to observe the perpetrator at the time of the offense. Furthermore, Basham's previous observation of Davis meant that the perpetrator was not a complete stranger, but was someone that Basham recognized having encountered a few hours earlier. This gives his identification of Davis at the show-up an additional indication of reliability. Finally, the fact that Basham, when asked whether he had observed "a bandage or anything" on the perpetrator's person, indicated that the perpetrator was wearing a cast on his left foot, thereby corroborating his identification of Davis, added a further indication of the reliability of the identification.
{¶ 22} Under all of these circumstances, we conclude that the show-up identification was proper, and that a motion to suppress that testimony would have had virtually no chance of succeeding.
{¶ 23} Basham testified that he recognized the perpetrator as the person he had earlier encountered, who had asked him for money. Through Davis's testimony, we know that this was Davis. Davis argues that Basham was essentially coached by Officer Trick into concluding that the perpetrator was the person he had earlier encountered, when Trick asked him if the perpetrator "had a bandage or anything." We are not persuaded by this argument. The officer did not refer specifically to a cast, but more generally to "a bandage or anything." We have found no indication in Basham's testimony that Trick's reference to "a bandage or anything" caused Basham to associate the perpetrator with the individual he had encountered before.
{¶ 24} Finally, Davis argues that his trial counsel was ineffective by not having objected to the prosecutor's misstatement of fact in her closing argument. We address this argument in Part IV below.
{¶ 25} Davis's Second Assignment of Error is overruled.
 IV
{¶ 26} Davis's Third Assignment of Error is as follows:
{¶ 27} "THE APPELLANT WAS PREJUDICED BY THE MISCONDUCT OF THE PROSECUTING ATTORNEY WHEN SHE MISSTATED THE EVIDENCE ADDUCED AT TRIAL. THIS VIOLATED THE APPELLANT'S CONSTITUTIONAL RIGHTS TO CROSS EXAMINATION AND HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL."
{¶ 28} The prosecutor's closing argument to the jury included the following:
{¶ 29} "Thomas [Basham] calls the police, makes a report that day, the police come, get the description, they go down to look for the person.
{¶ 30} "Now remember, Thomas didn't say anything about the cast. He didn't remember that right at first. When Officer Trick heard the description of the robber, he said: `well, did the person have any injuries?' And he didn't say: `Did he have an injured foot, did he have a cast on the foot?' He said: `did he have any injuries?' And Thomas: `yes, you know what, he had a cast on his foot.'
{¶ 31} Davis argues that this was a misstatement of the evidence, rising to prosecutorial misconduct, justifying reversal of his conviction. Davis argues, in the alternative, that his trial counsel was ineffective for having failed to object to this misstatement of the evidence. Davis objects to the prosecutor's having characterized Officer Trick's question to Basham as being: "did he have any injuries[,]" when, according to Basham, the question was actually: ". . . was any type of . . . bandage or anything on the person."
{¶ 32} In our view, this is not a significant misstatement. A question addressed to a "bandage or anything" is essentially calling for information about injuries. Furthermore, the most important point that the prosecutor was making was that the question did not direct Basham's attention to his assailant's foot.
{¶ 33} In our view, the prosecutor's comment during closing argument to which Davis objects is not a significant misstatement of the evidence. Davis's trial counsel could reasonably have concluded that any objection would simply have emphasized in the minds of the jurors the fact that Officer Trick's question concerning a "bandage or anything" had elicited Basham's statement that his assailant had a cast on his left foot, corroborating his identification of Davis.
{¶ 34} Davis's Third Assignment of Error is overruled.
 V
{¶ 35} All of Davis's assignments of error having been overruled, the judgment of the trial court is Affirmed.
WOLFF, P.J., and GRADY, J., concur.